**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cyril Mamola III and Rhonda Mamola, | No. CV-08-1687-PHX-GMS |
| Plaintiffs, | **ORDER** |
| vs. | |
| Group Manufacturing Services, Inc., | |
| Defendant. | |

Pending before the Court are four Motions in Limine (Dkt. ## 152–155) filed by Plaintiffs Cyril Mamola III and Rhonda Mamola ("Plaintiffs") and five Motions in Limine (Dkt. ## 158–162) filed by Defendant Group Manufacturing Services ("GMS" or the "Company"). As discussed at the June 18, 2010 Final Pretrial Conference, and as set further forth in this Order, these Motions are granted in part and denied in part.

**DISCUSSION**

**I.     Plaintiffs' Motion in Limine Re: Failure to Mitigate Damages**

Plaintiffs first contend that any evidence pertaining to Mr. Mamola's alleged failure to mitigate his damages should be excluded, as the Court has granted summary judgment on this issue. (Dkt. # 152.) While GMS correctly points out that Plaintiffs carry the burden of showing damages, mitigation of damages is an affirmative defense for which the defendant

1  carries the burden. Thus, given that GMS waived this affirmative defense, it has forfeited any
2  right to present evidence that Mr. Mamola did not mitigate his damages. *See Quint v. A.E.*
3  *Staley Mfg.*, 172 F.3d 1, 16 (1st Cir. 1999) ("As long as the claimant has made some effort
4  to secure other employment, the burden to prove failure to mitigate normally resides with the
5  defendant-employer[.]").

## II. The Parties' Motions in Limine Re: Failure to Exhaust Administrative Remedies & Subject-Matter Jurisdiction

The parties next dispute whether the Court has subject-matter jurisdiction over certain portions of Plaintiffs' ADA discrimination claims. (Dkt. ## 152, 162.) Specifically, GMS contends that Plaintiffs cannot recover on their claims that are based on a "history of" disability or on the theory that GMS "regarded" Mr. Mamola as being disabled. According to GMS, these claims fall outside this Court's subject-mater jurisdiction due to Mr. Mamola's failure to present these theories in his EEOC charge of discrimination. Although subject-matter jurisdiction over these claims appears to be proper, in this case, the Court will permit the parties to present evidence and argument on this issue at trial.

A party's failure to raise a specific claim in his or her EEOC complaint is not a complete bar to a district court's jurisdiction over that claim. Instead, as long as the complainant demonstrates "substantial compliance" with this "exhaustion requirement," the Court can exercise jurisdiction. *See Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003). Accordingly, district courts have jurisdiction over discrimination claims that are "like or reasonably related to" the allegations made to the EEOC. *Id.* Courts also have jurisdiction over claims that have could reasonably been expected to grow out of allegations presented to the EEOC. *See Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990).

In this case, it appears that Plaintiffs have "substantially complied" with the exhaustion requirement. Mr. Mamola's EEOC Charge alleged discrimination on the basis of his disability. And while that Charge did not specifically allege that GMS discriminated against him due to "a history of" disability or because he was "regarded as" disabled, these are the types of allegations that are "like or reasonably related to" those alleged in Mr.

Mamola's EEOC Charge. *See Leong*, 347 F.3d at 1122. They also appear to be the types of claims that reasonably could have been expected to grow out of the allegation of disability discrimination raised before the EEOC.

Nonetheless, the Court is reluctant to rule on the merits of this argument, which has been presented for the first time in a motion in limine. The Court is also reluctant to preclude testimony on this issue, as it does appear to be related to the Court's subject-matter jurisdiction, which cannot be waived.[1] *See Sosna v. Iowa*, 419 U.S. 393, 398 (1975) (disallowing waiver of subject-matter jurisdiction, even if the parties expressly agree to do so). Thus, to the extent that the Motion can be read as a request to permit evidence and argument related to subject-matter jurisdiction, the Court grants the Motion. Nevertheless, based on *Leong* and *Sosa*, the Court notes, at least at this time, that it sees no reason to find that subject-matter jurisdiction is lacking. *See Sosa*, 920 F.2d at 1456

### III. Plaintiffs' Motion in Limine Re: GMS's Expert Witness

The Court rejects Plaintiffs' Motion to exclude testimony from GMS's expert witness, Leroy Gaitner. (*See* Dkt. # 153.) Plaintiffs move to exclude this evidence on the basis that Mr. Gaitner's testimony will provide GMS with a "backdoor" for arguing that Mr. Mamola did not properly mitigate damages following his termination from the Company. (*Id.*) As set

---

[1] Plaintiffs vigorously argue that the GMS has waived any argument pertaining to Mr. Mamola's alleged failure to exhaust his administrative remedies. To support this proposition, Plaintiffs point to language in *Leong* wherein the Ninth Circuit stated that "[t]he exhaustion requirement is akin to a statute of limitations and is subject to waiver, equitable estoppel, and equitable tolling." 347 F.3d at 1122. The context of this language, however, indicates that only the *time limits* associated with the exhaustion requirement can be waived. *See id.* The requirement that a complainant raise his or her claims to the EEOC appears to be a "jurisdictional prerequisite" that is not subject to waiver. *See id.* ("[S]ubstantial compliance with the exhaustion requirement is a jurisdictional pre-requisite[.]"); *cf. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding that "filing a *timely* charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling") (emphasis added).

1  forth in this Court's April 2009 Summary Judgment Order, GMS has conceded its mitigation
2  of damages defense. (Dkt. # 149 at 19.)

3        GMS argues that Mr. Gaitner's opinion is not intended to show that Mr. Mamola failed to mitigate his damages, but to rebut the methodology used by Plaintiffs' expert in calculating damages. Because an appropriate decision on the matter may require an evaluation of Mr. Gaitner's exact testimony and its context, the Court denies Plaintiffs' Motion without prejudice. To the extent that Mr. Gaitner attempts to assert or imply that Mr. Mamola failed to mitigate his damages, Plaintiffs may renew their motion to exclude this evidence.

**IV.    Plaintiffs' Motion in Limine Re: Rhonda Confrontation**

Plaintiffs next move to exclude evidence that Mrs. Mamola was involved in a trespassing dispute with GMS in 2003. (Dkt. # 154.) As set forth in the Pretrial Conference, the Court finds this testimony irrelevant and inadmissible. This Motion, therefore, is granted.

**V.    Plaintiffs' Motion in Limine Re: Alex Singleton**

Plaintiffs' request to exclude testimony from Alex Singleton is granted in part and denied in part. (*See* Dkt. # 155.) Mr. Singleton served as GMS's president until he left the Company in 2003. He was also allegedly involved in a physical confrontation with Mr. Mamola around that time.

Though the Court agrees that evidence regarding the alleged confrontation is not relevant in this case, the Court cannot say at this point that *all* of Mr. Singleton's testimony will be irrelevant. Accordingly, testimony of the alleged confrontation between Mr. Singleton and Mr. Mamola shall be excluded; nonetheless; Mr. Singleton may testify on other relevant matters at trial.

**VI.    GMS's Motion in Limine Re: Worker's Compensation Claim**

The Court denies GMS's Motion to exclude evidence of actions taken by the Company that resulted in the denial of Mr. Mamola's 2005 worker's compensation claim. (*See* Dkt. # 155.) Because GMS's conduct appears to reasonably support an inference of past discrimination on the basis of Mr. Mamola's disability, and because it appears that this

evidence will be offered to show that GMS's asserted reason for terminating Mr. Mamola was pretext for intentional discrimination, evidence of GMS's allegedly improper conduct, at least at this point, is admissible. *See Coles v. Arizona Charlie's*, 992 F. Supp. 1214, 1217 (D. Nev. 1998) ("[B]ecause employer's past discriminatory policy and practice may be used to illustrate pretext in a . . . disparate treatment case, evidence of past acts should normally be admitted into evidence[.]") (citing *Hawkins v. Hennepin Tech. Ctr*, 900 F.2d 153, 155–56 (8th Cir. 1990) *cert. denied*, 498 U.S. 854 (1990)); *see also Gonzales v. Police Dept., San Jose*, 901 F.2d 758, 760–61 (9th Cir. 1990) (holding that district court erred when it refused to consider city's repeated violations of its own affirmative action plan); Fed. R. Evid. 404(b) (explaining that evidence of prior bad acts is admissible to show motive).[2]

Evidence of GMS's conduct regarding the worker's compensation claim may further be admissible to show that GMS took inconsistent actions when employees made false statements in official documents. At the summary judgment stage, GMS asserted that Mr. Mamola was terminated for making false statements in a Company document. GMS also asserts that Mr. Mamola made false statements in his application for worker's compensation; yet, the Company did not take any disciplinary action against Mr. Mamola for those allegedly false statements. Accordingly, the fact-finder could conclude that GMS's allegedly inconsistent conduct demonstrates that the decision to terminate Mr. Mamola was pretext for discrimination.

Though it appears that this evidence is admissible, the Court will not allow the parties to delve into a protracted mini-trial regarding the accuracy of Mr. Mamola's worker's compensation claim, as this may distract the jury from the primary issues in this case. Thus, while this Motion in Limine is denied, the Court may limit testimony on this issue to the extent it becomes too attenuated or confusing.

**VII. GMS's Motion in Limine Re: Front Pay Bifurcation**

---

[2]Of course, for Plaintiffs to use GMS's antagonistic conduct as evidence of a discriminatory motive, Plaintiffs must further adduce evidence suggesting that the allegedly antagonistic conduct was actually motivated by Mr. Mamola's disability.

GMS next requests that evidence and argument pertaining to front pay[3] be heard outside of the jury's presence. (Dkt. # 159.) To meet this request, GMS proposes that the Court bifurcate the issue of front pay from the other issues presented in this case.

In a recent decision, the Ninth Circuit explained that front pay is an equitable form of relief for courts, rather than juries, to decide. *See Traxler v. Multnomah County*, 596 F.3d 1007, 1010 (9th Cir. 2002) (concluding "that under the FMLA, front pay is an equitable remedy to be determined by the court"). Similarly, the ADA's remedial scheme delegates equitable issues, such as front pay, to the courts. *See Pollard*, 532 U.S. at 850; *see also Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001) ("'[T]he [S]eventh [A]mendment preserves the right to trial by jury of all legal claims,' whereas 'no right to a jury exists' for equitable claims.") (internal quotation omitted).

At the Pretrial Conference on this issue, both parties agreed that evidence pertaining to front pay should be introduced outside the jury's presence. Given the parties agreement, the Court grants GMS's Motion in Limine and will proceed in the following manner: When the parties present expert testimony regarding damages, they will bifurcate the issue of front pay from other damages testimony, and the Court will excuse the jury for portions of testimony that pertain *only* to front pay. This way, the Court will be able consider evidence of front pay, yet avoid the potential for that evidence to prejudice the jury in its evaluation of other issues. This approach will also allow the parties to present all of their expert testimony regarding damages at one time, rather than requiring the experts to appear for multiple proceedings.

---

[3] Front pay is defined as "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E. I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). "In cases in which reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers . . . courts have ordered front pay as a substitute for reinstatement." *Id.*

1 **VIII. GMS's Motion in Limine Re: ADA Retaliation Claim Is For the Court**

2 The Court agrees with GMS that adjudication of Mr. Mamola's ADA retaliation claim
3 is an equitable matter for the Court to decide. (*See* Dkt. # 160.) Ninth Circuit authority is
4 clear on this point: "Because . . . ADA retaliation claims are redressable only by equitable
5 relief, no jury trial is available." *Alvarado v. Cajun Operating Co.*, 588, F.3d 1261, 1270 (9th
6 Cir. 2009) (citing *Danjaq*, 263 F.3d at 962).

7 As noted by GMS in its Motion, and as discussed by the parties during the Pretrial
8 Conference, Mr. Mamola's evidence of ADA retaliation will almost certainly overlap with
9 evidence that pertains to those claims for which Mr. Mamola is entitled to a jury trial. The
10 Court, therefore, will consider with the parties at trial any steps, as necessary, to preserve the
11 rights of the parties.

12 **IX.    GMS's Motion in Limine Re. Unrelated Acts of Alleged Discrimination**

13 Pursuant to the Federal Rules of Evidence 401–404, GMS next moves to exclude the
14 testimony of another GMS employee, William Monroe, who allegedly was discharged from
15 the Company based on "medical problems." (Dkt. # 161.) At the Pretrial Conference, both
16 parties agreed that Mr. Monroe's testimony would not be offered unless GMS presented
17 evidence that it never discriminated against other employees with medical issues. The Court
18 will follow this approach. Should GMS assert that the Company is in compliance with federal
19 law, as it pertains to employees with medical conditions, by presenting evidence of the
20 Company's dealings with other employees, Mr. Mamola will be permitted to present
21 evidence to the contrary. GMS's Motion, therefore, is *conditionally* granted.

22 **IT IS THEREFORE ORDERED**:

23 (1) Plaintiffs' Motion in Limine Re: Affirmative Defenses (Dkt. # 152) is **GRANTED**
24 **IN PART** and **DENIED IN PART**. At trial, GMS shall not be permitted to present evidence
25 that Mr. Mamola failed to mitigate his damages. The parties shall, however, be permitted to
26 challenge the Court's subject-matter jurisdiction as it pertains to Plaintiffs' failure to exhaust
27 aspects of their ADA discrimination claim.

28

(2) Plaintiffs' Motion in Limine Re: Defendant's Expert Witness (Dkt. # 153) is **DENIED** without prejudice. To the extent that GMS attempts to offer testimony, through its expert, suggesting that Mr. Mamola failed to mitigate damages, Mr. Mamola is permitted to challenge the introduction of that evidence.

(3) Plaintiffs' Motion in Limine Re: Rhonda Confrontation (Dkt. # 154) is **GRANTED** as this evidence is irrelevant to the issues to be resolved at trial.

(4) Plaintiffs' Motion in Limine Re: Alex Singleton (Dkt. # 155) is **GRANTED** in part and **DENIED** in part. Mr. Singleton shall be permitted to testify at trial, but testimony regarding his alleged confrontation with Mr. Mamola in 2003 will not be permitted.

(5) GMS's Motion in Limine Re: Worker's Compensation Claim (Dkt. # 158) is **DENIED**.

(6) GMS's Motion in Limine Re: Front Pay Bifurcation (Dkt. # 159) is **GRANTED**. Though the Court will allow the parties to present evidence of front-pay damages during the course of trial and prior to the jury's decision on liability, testimony that relates only to the issue of front pay shall be presented outside of the jury's presence.

(7) GMS's Motion in Limine Re: ADA Retaliation Claim is for the Court (Dkt. # 160) is **GRANTED**. The Court, rather than the jury, will render a decision on Mr. Mamola's ADA retaliation claim.

(8) GMS's Motion in Limine Re: Unrelated Act of Alleged Discrimination (Dkt. # 161) is *conditionally* **GRANTED**. Should GMS offer testimony at trial indicating past-compliance with the ADA, however, the Court will allow Mr. Mamola to present evidence of GMS's alleged discrimination against William Monroe.

(9) GMS's Motion in Limine Re. Lack of Jurisdiction Over ADA Claims Arising Under 42 U.S.C. 12102(2)(B–C) (Dkt. # 162) is **GRANTED**. The parties are permitted to present evidence and raise argument pertaining to the Court's subject-matter jurisdiction.

DATED this 30th day of June, 2010.

*H. Murray Snow*
G. Murray Snow
United States District Judge